UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RRR, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>THOMAS M. TOGGAS, *et al.*,<br><br>    Defendants. | Civil Action No. 11-1622 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

Pending before the Court in this long-running action is Defendants Thomas M. Toggas and Kathryn Toggas' Motion for Relief from Judgment ("Defs.' Mot."), ECF No. 72, which the Court construes as a motion for relief, pursuant to Federal Rule of Civil Procedure 54(b), from the Court's Memorandum Opinion and Order of January 9, 2014, ECF No. 52, denying the defendants' "Motion to Dismiss (Subject Matter Jurisdiction)" ("Defs.' 2013 Mot. Dismiss"), ECF No. 48. Since the Court issued its Order denying the defendants' 2013 Motion to Dismiss, a South Carolina court has definitively—and dispositively—resolved a fundamental dispute in this matter. Consequently, for the reasons set forth below, the defendants' motion is granted and this case is dismissed as to all defendants.

## I. BACKGROUND

The factual background of this action, brought pursuant to the District of Columbia's Uniform Fraudulent Transfer Act (the "DCUFTA"), D.C. Code §§ 28-3101 *et seq.*, has been explained in detail in this Court's prior opinions and orders. *See* Mem. Op., Sept. 24, 2013 (the "Sept. 2013 Mem. Op.") at 2–9, ECF No. 39; Mem. Op., Jan. 9, 2014 (the "January 2014 Mem. Op.") at 1–4, ECF No. 52. The full history of this litigation will not be repeated here, in favor of

1

a brief discussion of the procedural and legal developments that have occurred since the Court's January 2014 Memorandum Opinion and Order denying the defendants' December 2013 Motion to Dismiss.

The instant suit alleges that the defendants engaged in various fraudulent transfers of assets to stymie the plaintiff's attempt to collect on a judgment rendered by a South Carolina court in 2003. *See generally* Compl., ECF No. 1. The defendants moved to dismiss this matter twice, Defs.' Mots. Dismiss at 1, ECF Nos. 4, 5; Defs.' 2013 Mot. Dismiss at 1, and both times the Court denied the motions, Order, Jan. 27, 2012, at 1, ECF No. 12; January 2014 Mem. Op. at 1.[1] The most recent motion to dismiss occurred in December 2013, after extensive discovery and motions practice, in which the defendants challenged the Court's subject matter jurisdiction over this action, less than a month before a bench trial was set to begin. Defs.' 2013 Mot. Dismiss at 1. The defendants averred that the South Carolina judgment had been extinguished as a matter of law and, consequently, the plaintiff was no longer a "creditor" within the meaning of the DCUFTA and, thus, there was no case or controversy at issue. *See generally id.* The defendants' motion was denied in January 2014, January 2014 Mem. Op. at 1, and the parties were ordered to appear for a bench trial on January 13, 2014, as previously scheduled, Minute Order, Nov. 25, 2013.

On January 13, 2014, only Defendants Kathryn Toggas and Net Branch Capital, LLC appeared for trial, however, since Defendant Thomas Toggas was absent due to his filing for bankruptcy in Pennsylvania that very morning. Trial Tr. ("Tr.") at 2:20-23, ECF No. 61. During a brief recess after opening statements, but before testimony had begun, Defendant Kathryn Toggas filed for bankruptcy in the District of the District of Columbia. *Id.* 36:1-4. The filing of

---

[1] The defendants also moved for summary judgment, ECF No. 33, which motion was also denied, Order, Sept. 24, 2013, at 1, ECF No. 38.

2

these petitions resulted in an automatic stay of proceedings pursuant to 11 U.S.C. § 362, against Defendants Thomas Toggas and Kathryn Toggas, but proceedings against the corporate defendant, Net Branch Capital, LLC, proceeded. *See id.* 37:8-20. Defendant Thomas Toggas eventually appeared as a witness in the bench trial after his counsel informed him that Defendant Thomas Toggas' presence was required by a trial subpoena and, if he did not appear, the Court would issue a bench warrant for his arrest. *See* Tr. at 7:5-22; *id.* 36:9-19.

At the conclusion of the bench trial, the plaintiff orally moved for an expedited factual finding that the defendants acted in bad faith by filing their bankruptcy petitions on the first day of trial. *Id.* at 233:11–234:21. That motion was granted in part and denied in part after the Court received briefing from the parties. Mem. & Order at 3, ECF No. 59. Consideration of the case was then stayed under the automatic stay provision of 11 U.S.C. § 362 until the defendants' bankruptcy proceedings were resolved. Minute Order, Feb. 26, 2014.

In late November, 2014, the plaintiff filed a "Notice of Bankruptcy Court Rulings Allowing This Case To Proceed," as required by the Court's Order outlining post-trial proceedings, and advised the Court that the bankruptcy courts with jurisdiction over Defendant Thomas Toggas and Defendant Kathryn Toggas' petitions had granted relief from the bankruptcy code's discharge injunction to allow this action to proceed. Pl.'s Notice of Bankruptcy Crt. Rulings at 1–2, ECF No. 64. The stay in this matter was subsequently vacated, and the parties proceeded to complete post-trial briefing. *See* Minute Order Dec. 1, 2014; Minute Order, Dec. 4, 2014; Minute Order, Jan. 8, 2015.

Six days after submitting their response to the plaintiff's proposed conclusions of law—which submission rendered the bench trial ripe for decision—the defendants filed the instant motion styled a "Motion for Relief Pursuant to FRCP 60(b) From This Court's Interim Order

Entered On January 9, 2014 Denying the Defendants' Motion to Dismiss the Above Captioned Case." Defs.' Mot. at 1. The defendants' motion essentially resurrects the arguments in their December 2013 motion to dismiss, but this motion is predicated on a new, salient fact: namely, that a South Carolina court definitively ruled that the underlying judgment on which the plaintiff's fraudulent transfer action was based has been extinguished as a matter of law. *Id.* Consequently, the defendants allege that the plaintiff lacks standing to pursue this action since the DCUFTA "does not create an independent cause of action to avoid fraudulent transfers unless there is a 'debt' owed by a debtor to a creditor that is separate and distinct from [the] fraudulent transfers themselves." *Id.* at 2.

The plaintiff rightfully points out that the Court's ruling denying the defendants' motion to dismiss is not a "final judgment" for the purposes of Rule 60(b), the procedural rule initially cited by the defendants in their filing. Pl.'s Opp'n Defs.' Mot ("Pl.'s Opp'n") at 3, ECF No. 74; *see also* FED. R. CIV. P. 60(b) (providing procedure for relief from "a final judgment, order, or proceeding."). Nevertheless, the Court construes the defendants' motion as one for revision of an Order under Federal Rule of Civil Procedure 54(b), which rule provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and disabilities."

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts

are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, "have an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute.'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); FED. R. CIV. P. 12(h)(3).

When considering a motion to dismiss under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)) (internal citations omitted). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

Moreover, in evaluating subject matter jurisdiction, the court, when necessary, may "'undertake an independent investigation to assure itself of its own subject matter jurisdiction,'" *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)), and consider facts developed in the record beyond the complaint, *id. See also Herbert*, 974 F.2d at 197 (in disposing of motion to dismiss for lack of subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts"); *Alliance for Democracy v. FEC*,

362 F. Supp. 2d 138, 142 (D.D.C. 2005).  The burden of establishing any jurisdictional facts to support the exercise of the subject matter jurisdiction rests on the plaintiff.  *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007).

### B.  Standing

Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies."  CONST. Art. III, § 2 cl. 1.  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (alterations in original).  Absent standing by the plaintiffs, the Court lacks subject matter jurisdiction to hear the claim and dismissal is mandatory.  *See* FED. R. CIV. P. 12(h)(3).  The Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements."  *Lujan*, 504 U.S. at 560.  First, "the plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Id.* (citations and internal quotation marks omitted).  "Second, there must be a causal connection between the injury and the conduct complained of," i.e., the injury alleged must be "fairly trace[able] to the challenged action of the defendant."  *Id.* (alteration in original; citation omitted).  Finally, it must be "likely" that the injury will be "redressed by a favorable decision."  *Id.* at 561 (internal quotation marks omitted).

### III.  DISCUSSION

Critical to resolving the instant motion is the South Carolina court opinion cited by the defendants as evidence that the judgment against them has been extinguished as a matter of law.

Consequently, the Court first summarizes that opinion and its holdings before turning to the resolution of the instant motion.

### A. The South Carolina Judgment

Nearly three years after the instant suit was filed, on August 15, 2014, the defendants[2] filed a declaratory judgment action against the plaintiff in the South Carolina Court of Common Pleas "seeking an order by the court that a judgment entered against Plaintiffs on July 24, 2003 . . . has expired and has no active energy." Defs.' Mot. Ex. A (*Toggas v. RRR, Inc.*, Case No. 2014-CP-07-2016, Order Granting Pls.' Mot. J. on the Pleadings and Denying Def.'s Mot. Dismiss (the "S.C. Opinion")) at 1, ECF No. 72. The South Carolina court granted the plaintiffs' motion for judgment on the pleadings. *Id.*

South Carolina law states that judgments may be executed "at any time within ten years from the date of the original entry thereof and shall have active energy during such period." *Id.* at 2–3 (quoting S.C. Code Ann. § 15-39-30). "South Carolina courts have repeatedly held that a judgment is extinguished after the expiration of ten years from the date of entry." *Id.* at 3. Consequently, a judgment "holder loses his or her status as a judgment creditor . . . [a]s soon as a judgment becomes ten years old." *Id.* (citing *Carr v. Guerard*, 616 S.E. 2d 429, 430 (S.C. 2005)).

A "narrow exception" to this general rule exists "if the judgment creditor has completed all of its efforts under the South Carolina execution and Supplementary Proceedings processes prior to the ten-year expiration date and is awaiting the issuance of an execution order by the court." *Id.* (citing *Linda Mc Co., Inc. v. Shore*, 703 S.E. 2d 499, 505 (S.C. 2010)). The South

---

[2] To avoid confusion, the Court refers to the parties as they are delineated in this case, even though in the South Carolina court's opinion Defendants Thomas Toggas and Kathryn Toggas are the plaintiffs and Plaintiff RRR, Inc. is the defendant.

7

Carolina court held that the plaintiff had "not complied with any of the applicable statutes in South Carolina to collect on its judgment," as required by *Linda Mc Company, Inc. Id.* at 5.  The South Carolina court noted that there were "no collection efforts pending in South Carolina," "no hearing on Supplementary Proceedings," and no party was "awaiting an execution order from any court." *Id.* Moreover, had the plaintiff initiated proceedings in South Carolina to collect on the judgment, the defendants "would have had to post a *supersedeas* bond to stay those execution proceedings during their appeals" before the South Carolina Supreme Court. *Id.* at 6.  Since the plaintiff failed to take any action to collect on its judgment in South Carolina, the South Carolina court held that the plaintiff "cannot complain now that the judgment has expired when it failed to pursue its rights during the appeals" raised by the defendants. *Id.*[3]

The South Carolina court specifically addressed the instant proceedings, stating that the plaintiff was "currently pursuing a fraudulent transfer action in the District Court for the District of Columbia." *Id.* at 7.  The South Carolina court found this inconsequential to the question at hand, since the plaintiff was "not actively trying to execute upon the South Carolina judgment *in South Carolina*, which is necessary to trigger the 'narrow' exception to the statute created by the [South Carolina] Supreme Court in *Linda Mc. Co*." *Id.* (first emphasis added).[4]

With this context, the instant motion is now examined.

---

[3] This Court's January 2014 Memorandum Opinion found that the South Carolina judgment was *not* extinguished because it found that the exception in *Linda Mc Company, Inc.* did apply to the instant matter and the ten year period in which to execute the South Carolina judgment was tolled. January 2014 Mem. Op. at 8–9.  In doing so, this Court interpreted South Carolina law more broadly than the South Carolina court did in the S.C. Opinion, finding that the plaintiff's UFTA action in this Court was sufficient to trigger the *Linda Mc Company* exception. *Compare id.* at 8–9 (finding the DCUFTA action "constitutes a judgment enforcement action [that] tolled the ten year limitations period") *with* S.C. Opinion at 4–7 (interpreting *Linda Mc Company, Inc.* exception as "narrow") *id.* at 7 n.2 (finding that the instant matter did not constitute a proceeding under South Carolina law sufficient to trigger the *Linda Mc Company* exception).  Thus, the S.C. Opinion removes the factual predicate on which this Court's January 2014 Memorandum Opinion was based, namely, that the 2003 South Carolina judgment remained valid due to equitable tolling. *See* January 2014 Mem. Op. at 9.

[4] The South Carolina court also rejected an argument raised by the plaintiff that the defendants lacked standing to bring their action in South Carolina. S.C. Op. at 7.

8

### B.     The Extinguishment Of The Underlying Judgment Is Fatal To The Plaintiff's DCUFTA Claims.

The defendants argue that the Court's Order denying their motion to dismiss in 2014 should be reconsidered in light of the South Carolina court's decision that the underlying judgment on which the plaintiff's action is based has expired, since the S.C. Opinion has res judicata effect on this action.  *See* Defs.' Mot. at 1–2.  The defendants further argue that if the S.C. Opinion is given preclusive effect, the plaintiff's claims must fail.  *See id.*  The Court examines each contention in turn.

#### 1.     *The South Carolina Opinion Has Preclusive Effect*

In the January 2014 Memorandum Opinion denying the defendants' December 2013 Motion to Dismiss, this Court held that the 2003 judgment against the defendants had not expired because (1) the plaintiff had instituted an enforcement action that triggered the exception outlined in *Linda Mc Company, Inc.*, and (2) the policy implication of the defendants' view was that "judgment debtors would be encouraged to engage in conniving or otherwise unscrupulous practices to avoid payment of their debts for ten years in an effort to be automatically relieved from the obligation by the passage of time."  January 2014 Mem. Op. at 8–9.

The final judgment of the South Carolina court, interpreting South Carolina law, directly contradicts this Court's interim holding.  The S.C. Opinion states clearly that the instant action before this Court "is not an execution proceeding that would trigger the 'narrow' exception under *Linda Mc Co.*"  S.C. Op. at 7 n.2.[5]  The defendants argue that this ruling should be given res judicata effect in this matter.  Defs.' Mot. at 1.

---

[5] The plaintiff argues that this statement is "dictum" and need not be followed by this Court.  Pl.'s Opp'n at 3.  To the contrary, the South Carolina court was required to determine whether the plaintiff's had instituted proceedings that would toll the expiration of the pre-existing judgment in order to resolve the question before it.  *See* S.C. Op. at 5–7.  Thus, the issue of whether any action generally, and this action particularly, could toll the expiration of the pre-existing judgment was "actually and necessarily determined by a court of competent jurisdiction" in the S.C. Opinion.  *See Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007).

> For another court's opinion to be given res judicata effect, three elements must be met:
>
> [1] the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case[; 2], the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case[; and 3], preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)) (alterations in original). For the question of whether the underlying judgment on which the plaintiff's DCUFTA claim is based remains active, such that the plaintiff is a "creditor" within the meaning of the DCUFTA, the S.C. Opinion must be given preclusive effect. The same parties to this action were the parties to the South Carolina action. The S.C. Opinion states that the defendants "no longer owe any debts" to the plaintiff and the plaintiff "is no longer a judgment creditor of" the defendants. S.C. Op. at 4. The South Carolina court expressly and necessarily considered whether the exception delineated in *Linda Mc Company* applied based on the actions taken by the plaintiff in the District of Columbia and found that the exception did not apply. *Id.* at 5–7. Finally, the plaintiff makes no effort to demonstrate that applying preclusion in this matter would "work a basic unfairness to the party bound by the first determination." *See generally* Pl.'s Opp'n. Thus, the S.C. Opinion must be given preclusive effect on this issue.[6] Since the Court's January 2014 Memorandum Opinion denying the defendants' December 2013 motion to dismiss was premised on the finding that "[t]he judgment against the defendants is not extinguished," January 2014 Mem. Op. at 9, the S.C. Opinion demands a revisiting of that holding. *See supra* note 3.

---

[6] Although the S.C. Opinion does not address the policy concerns raised by this Court's January 2014 Memorandum Opinion regarding incentivizing deceitful practices, the S.C. Opinion's notes an over-arching "public policy of [South Carolina is] expressed in the statutes to limit the life of judgments to ten years. *A judgment creditor should recognize this policy and proceed expeditiously to conclude his efforts to collect his judgment within the ten year period.*" S.C. Op. at 6 (quoting *Wells ex rel. A.C. Sutton & Sons, Inc. v. Sutton*, 382 S.E.2d 14, 16 (S.C. Ct. App. 1989)) (emphasis in original).

10

### 2. *The Plaintiff Lacks Standing To Pursue Its DCUFTA Claims*

Although the S.C. Opinion conclusively determines that the 2003 judgment against the defendants is extinguished, that finding does not end the inquiry. As this Court noted in dicta in the January 2014 Memorandum Opinion, there is some question as to whether the DCUFTA claims would survive the extinguishment of the underlying judgment. *See* Mem. and Order at 9–10. A close review of the relevant case law shows that, in this instance, the plaintiff's claims cannot survive.

The District of Columbia does not appear to have addressed the precise situation at issue here, where a judgment creditor's judgment is extinguished while a DCUFTA action is pending. Two states that have considered such actions, Oregon and South Carolina, have held unequivocally that the remedial nature of the UFTA means any fraudulent transfer action cannot exist independent of a valid debt.

In *Carr v. Guerard*, a case relied upon by the South Carolina court in its opinion, the South Carolina Supreme Court held that a fraudulent transfer action does not survive if the underlying judgment has been extinguished as a matter of law. 616 S.E.2d at 430. In *Carr*, a purported creditor initiated an action under South Carolina's codification of the Statute of Elizabeth, a precursor to the Uniform Fraudulent Transfer Act, *see Donell v. Kowell*, 533 F.3d 762, 774 (9th Cir. 2008) (citing Statute of Elizabeth as among "laws governing fraudulent transfer [that] have existed for centuries" and "remarkably similar to the current version" of the UFTA), after the judgment on which the creditor was attempting to collect had expired, *Carr*, 616 S.E.2d at 430. The *Carr* court held that since the fraudulent transfer action would have the effect of collecting on a judgment that had since expired, the action was prohibited by statute for two reasons. *Id.* at 430–31.

First, the *Carr* court held that "as soon as his judgment became more than ten years old, [the creditor] lost his judgment-creditor status. Because he is no longer a creditor, he lacks standing to bring an action under the Statute of Elizabeth." *Id.* at 430. Second, even if the creditor still had standing, the *Carr* court noted that the setting aside of a fraudulent conveyance "would be a meaningless exercise" since the creditor would no longer have any right to collect on the judgment the fraudulent conveyance was used to prevent payment upon. *Id.* at 431. Thus, the extinguishing of the judgment in *Carr* also extinguished any ability to raise a fraudulent transfer action. *See id.*

The Oregon courts have reached the identical conclusion, based upon the UFTA itself. In *Oregon Recovery, LLC v. Lake Forest Equities, Inc.*, 211 P.3d 937, 939 (Or. App. Ct. 2009), the plaintiffs initiated a suit under Oregon's version of the UFTA seeking to set aside certain conveyances as designed to frustrate their recovery of a judgment that had not yet expired. While the UFTA action was pending, the judgments on which the UFTA action was based expired. *Id.* The Oregon court found that "the remedies for relief from a fraudulent transfer are available to creditors," which are defined as those who have "a claim against a debtor." *Id.* at 941. Once the judgments expired against the defendants, the Oregon court held, the plaintiffs "were no longer creditors of defendants, because the debt that formed the basis for their claims against defendants ceased to exist." *Id.*

The court in *Oregon Recovery, LLC* analogized to another fraudulent transfer case where the plaintiff's claims were mooted by the satisfaction of the underlying judgment before judgment on the fraudulent transfer action had been entered. *Id.* at 942 (citing *Goodwin v. Usher*, 795 P.2d 1112 (Or. App. Ct. 1990)). In that case, the Oregon court similarly held that once the underlying judgment on which a fraudulent transfer action had been satisfied, the

fraudulent transfer action was moot since "the plaintiff was no longer a creditor of the defendant entitled to a remedy." *Id.*

*Oregon Recovery, LLC* involved analogous facts to those at issue here: in both that case and the instant matter, an UFTA action was initiated prior to the extinguishment of a valid judgment as a matter of law. *See id.* at 939. The *Oregon Recovery, LLC* court held that once the underlying judgment ceased to exist, the fraudulent transfer action similarly ceased to exist since the plaintiff was no longer a "creditor" entitled to relief under the statute. *Id.* at 942. The DCUFTA contains a provision common to states that have enacted the UFTA whereby the DCUFTA "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." D.C. Code § 28-3111. Thus, finding that the DCUFTA claims in this matter survived the extinguishment of the judgments on which they are based would contravene the express statutory command in D.C. Code § 28-3111 to achieve uniformity given that other courts to address closely analogous facts have held to the contrary.

The cases relied upon the plaintiff, and cited by this Court in its dicta in the January 2014 Memorandum Opinion, do not counsel any differently. In three of the cases cited by the plaintiff, the underlying judgment on which a fraudulent transfer action was based remained valid. *See In re Duggar*, Nos. SC-11-1052, 05-00024-LA7, Adversary No. 08-90002, 2012 WL 2086562, at *11 (9th Cir. B.R. June 8, 2012) (holding that fraudulent transfer action was available to plaintiff where fraudulent transfer predated judgment of indebtedness, but judgment of indebtedness remained valid); *Willecke v. Toth*, No. 07-14676, 2009 WL 3153081, at *3–4 (E.D. Mich. Sept. 30, 2009) (allowing fraudulent transfer action to proceed where alleged fraudulent transfer occurred prior to creditor being entitled to collect debt, but where judgment

conferring creditor status was still valid); *Dominguez v. Eppley Transp. Servs., Inc.*, 763 N.W.2d 696, 702–03 (Neb. 2009) (holding that creditor "is entitled to an avoidance of [a] transfer to the extent necessary to satisfy his judgment," even though creditor did not have a "right to payment" until after the fraudulent transfer occurred). To the extent that the plaintiff relies upon *In re Desmarais*, 518 Fed. App'x 671, 672 (11th Cir. May 1, 2013), for the proposition that the UFTA creates an independent cause of action, Pl.'s Opp'n at 6, the plaintiff's reliance is misplaced. In *In re Desmarais*, the Eleventh Circuit addressed whether a valid *judgment* on a fraudulent transfer claim was sufficient to except a given debt from discharge in bankruptcy. 518 Fed. App'x at 672. The Eleventh Circuit held that although the fraudulent transfer judgment was initially based on a simple contract debt, which would not be "excepted from discharge in bankruptcy," the presence of a final judgment of fraudulent transfer converted the original contract debt into a different type of debt, i.e., a valid judgment. *Id.* In the instant matter, no judgment was ever obtained that the defendants engaged in a fraudulent transfer.[7] Thus, *In re Desmarais* is wholly inapposite.

### 3. *The Plaintiff's Judgment Against Net Branch Capital Does Not Survive The Extinguishment Of The South Carolina Judgment*

In a last ditch effort to save its case, the plaintiff asserts that its judgment from the D.C. Superior Court "is not a domesticated South Carolina judgment" and is "a valid, unexpired, and

---

[7] The Court recognizes that the delays in prosecuting this DCUFTA claim have been egregiously aggravated by the defendants through their dilatory practices in discovery, *see* Joint Status Report on Discovery at 1, ECF No. 27 (plaintiff noting that "Defendants' document production remains woefully inadequate" since defendants failed to produce "a single responsive document relevant" to a number of matters at issue in the instant matter), and filing bankruptcy petitions in an effort to delay trial proceedings, Mem. and Order, Jan. 31, 2014 at 6, ECF No. 59 (finding that "the Toggases sought bankruptcy protection, at least in part, out of a desire to delay the proceedings in the instant matter"). Nevertheless, as the South Carolina court pointed out, the plaintiff took no action to initiate proceedings in South Carolina that could have extended the life of the judgment or require the defendants to post a *supersedeas* bond. S.C. Op. at 6.

14

enforceable District of Columbia judgment against Defendant Net Branch." Pl.'s Opp'n at 6. The plaintiff is incorrect.

The plaintiff's D.C. judgment against Defendant Net Branch Capital, LLC, is a garnishment judgment issued when the defendant "failed to respond to the Superior Court's writ of garnishment . . . under D.C. Code § 16-556." Pl.'s Opp'n at 6. The D.C. Code section at issue states that "[w]hen the garnishee has failed . . . to appear and show cause why a judgment of condemnation should not be entered, judgment shall be entered against him *for the whole amount of the plaintiff's judgment and costs*, and execution may be had thereon." D.C. Code § 16-556(b) (emphasis added). Since the plaintiff's judgment on which the garnishment was based has been extinguished, the garnishment itself is no longer valid. *See In re Schneiderman*, 251 B.R. 757, 769 (Bankr. D.D.C. 2000) (holding that once debt has been discharged, garnishment action to collect on debt ceased to exist, since "there is currently no debt upon which to base a . . . garnishment proceeding"). Viewed in another light, even if the garnishment judgment is still valid, the "amount of the plaintiff's judgment and costs," D.C. Code § 16-556(b), is now zero, since the plaintiff's judgment has been extinguished.

\*    \*    \*

To sum up, the S.C. Opinion has preclusive effect in this Court to the extent that the S.C. Opinion holds that the 2003 judgment against the defendants upon which the plaintiff's DCUFTA action is based has been extinguished. In the interest of uniformity, and absent precedent under D.C. law, the Court will follow the courts in Oregon and South Carolina which have found that once a judgment has been extinguished as a matter of law, any fraudulent transfer action based upon that judgment is also extinguished. To the extent that the plaintiff asserts that its District of Columbia judgment against Net Branch Capital, LLC, remains valid,

15

the plaintiff is incorrect because that garnishment action is based on a judgment that is no longer valid. In other words, this Court lacks subject matter jurisdiction over this action because there is no longer an active case or controversy between the parties, since the extinguishment of the 2003 judgment also extinguished the plaintiff's DCUFTA claims.

Although this may appear to be a harsh result, particularly in the context of the defendants' flagrant abuses of the discovery process and dilatory tactics, the plaintiff could easily have avoided it by instituting proceedings at any point in the ten years following its judgment in South Carolina to collect on that judgment. *See* S.C. Op. at 6. At the very least, the plaintiff would have forced the defendants to put forward a *supersedeas* bond in order to avoid paying the plaintiff immediately. *Id.* The plaintiff's failure to "institute[] any collection efforts in South Carolina on the judgment despite its right to do so 10 days after the jury verdict was entered as a judgment," *id.* (emphasis in original), is ultimately responsible for the dismissal of the plaintiff's claims here.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion is granted and this matter is dismissed under Federal Rule of Civil Procedure 12(b)(1), since there is no longer a live case or controversy before this Court.

An Order consistent with this Memorandum Opinion will issue contemporaneously.

Date: April 13, 2015

_____
BERYL A. HOWELL
United States District Judge